**JUDGE DANIELS**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVELIS KHANNA<br><br>                        Plaintiff,<br><br>    - against -<br><br>HYDE LEADERSHIP CHARTER SCHOOL, KENNETH KERN, JOANNE GOUBOURN, PIERRE GOUBOURN, CLIFFORD VON VOORHEES, YAHIRA ADORNO, HERBERT FIXLER, STEVEN CARY, HERBERT M. KAPLAN, JEFFREY LUND, DAVID M. STEADLEY, and ELENOR DENKER,<br><br>                        Defendants. | **12 CV 4180**<br>____ Civ. ____<br><br>COMPLAINT<br><br>JURY TRIAL<br>DEMANDED |

        Plaintiff, Evelis Khanna, by her attorneys, the LAW OFFFICES OF KARL J. STOECKER, as and for her Complaint against the defendants alleges as follows:

### Preliminary Statement

        1.   By this action, plaintiff seeks to hold defendants responsible for discriminating against her on the basis of her gender, and in particular, her pregnant status, in violation of her rights under the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k)

### JURISDICTION AND VENUE

        2.   This court has jurisdiction of the action pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331 and 1343. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c). The unlawful

employment practices alleged herein were committed in whole or in part in the Southern District of New York.

**PARTIES**

3. Plaintiff Evelis Khanna is a resident of Bronx County in the State of New York. Prior to defendants' termination of her employment, plaintiff worked as an administrative assistant at defendant Hyde Leadership Charter School ("Hyde Leadership").

4. At all times relevant hereto, Defendant Hyde Leadership was and remains a not-for-profit educational institution chartered pursuant to the New York State Charter Schools Act.

5. At all times relevant hereto, Defendant Joanne Goubourn was the "Head of School" and a member of the Board of Trustees of Hyde Leadership.

6. At all times relevant hereto, Defendant Pierre Goubourn was an admission officer at the school.

7. At all times relevant hereto, Defendant Kenneth Kern was the Director of the Hyde Leadership Elementary School and plaintiff's immediate supervisor.

8. At all times relevant hereto, Defendant Clifford Von Voorhees was Hyde Leadership's Chief Operating Officer.

9. At all times relevant hereto, Defendant Yahira Adorno was a manager in the Human Resources Department of Hyde Leadership.

10. At all times relevant hereto, Defendant Herbert Fixler was a member of the Board of Trustees of Hyde Leadership.

11. At all times relevant hereto, Defendant Steven Cary was a member of the Board of Trustees of Hyde Leadership.

12. At all times relevent hereto, Defendant Herbert M. Kaplan was a member of the Board of Trustees of Hyde Leadership.

13. At all times relevant hereto, the Defendant Jeffrey Lund was a member of the Board of Trustees of Hyde Leadership.

14. At all times relevant hereto, the Defendant David M. Steadley was a member of the Board of Trustees of Hyde Leadership.

15. At all times relevant hereto, the Defendant Elenor Denker was a member of the Board of Trustees of Hyde Leadership.

## PROCEDURAL REQUIREMENTS

16. Plaintiff has satisfied all applicable precedural requirements prior to the commencement of this

action. She filed a Charge of Discrimination with the United Stated Equal Employment Opportunity Commission on or about November 25, 2009, received a right to sue letter on February 27, 2012, and commenced this action within 90 days of her receipt of the right to sue letter.

## SUBSTANTIVE ALLEGATIONS

17. Defendant Hyde Leadership is a New York City Charter School based on a "character development" educational model developed by its founder Joseph W. Gauld (the "Gauld System"). The Gauld System mandates the participation of not only students, but parents and school staff in its unique character building system.

18. All members of the Hyde Leadership staff are required to participate in periodic character development meetings where intimate, personal issues are explored in depth in group settings. In the words of Hyde Leadership's promotional materials: "[w]e expect our success to come more from an adherence to a belief system than to a set curriculum. The cornerstones of that belief system are HYDE's Five Words, Five Principles and 10 Priorities."

19. At all times relevant hereto Hyde Leadership was open to students in Kindergarten through the third

grade and, grades 6 through 9. It subsequently expanded its enrollment from Kindergarten through the 11th grade.

20. Plaintiff commenced employment with the defendants as a paid intern while she was in high school on May 29, 2007 and worked intermittetly though June of 2008.

21. Following her graduation from high school, she was hired as a full time office assistant on November 3, 2008 and reportedly to the then Elementary School Director, defendant Kenneth Kern.

22. Plaintiff's duties included general secretarial and administrative work. She was also responsible for, among other things, cleaning up the caferteria after breakfest and supervising students during lunch time. She regularly interacted with students and parents in connection with her job.

23. In or about December of 2008 plaintiff advised Joanne Goubourn, then the Hyde Leadership Head of School, that she and her husband were expecting a child. Therafter the change in all of her supervisors' attitudes was both immediate and dramatic. Defendant Joanne Goubourn advised plaintiff that she was "dissappointed" in her and asked if she thought Hyde was still the right place for her given her pregnancy. These comments were in keeping with the Gauld System which subscribes to the so-called

"Brother's Keeper" principle. Pursuant to the latter, all constituents of the Hyde Community, students and staff alike, are to take responsibility for assisting each other with adherence to the Gauld System's supposed character building dictates.

24. Defendant Joanne Goubourn repeatedly advised plaintiff, essentially, that getting pregnant at a young age, and before her career was established, reflected a lack of character. Goubourn admonished that it was very difficult to be pregnant, or to care for a new born child, and to work at the same time.

25. Thereafter, in or about January of 2009, defendant Joanne Goubourn informed plaintiff that they were taking away her after-school duties, ostensibly because they would be too difficult for plaintiff to accomplish now that she was pregnant.

26. Defendant Joanne Goubourn then suggested to plaintiff that it might not be possible for her to make enough money at Hyde Leadership to support her family following this reduction of hours and that perhaps she should consider other employment options.

27. Defendant Pierre Goubourn's remarks following plaintff's revelation of her pregnancy to defendant Joanne Goubourn, his wife, were equally

indicative of a discriminatory animus. He admonished plaintiff that her becoming pregnant at 19 years old was setting a bad example for the students who looked up to her as a role model and, in many cases, were only several years younger than her.

28. Thereafter all of her lunchroom duties were taken away from her in order to minimize her interaction with students.

29. Defendant Pierre Goubourn instructed students to avoid plaintiff because she was a "bad influence."

30. Plaintiff's complaints to defendant Joanne Goubourn regarding her husband's comments referring to her as a "bad influence" fell upon deaf ears and no corrective action was taken.

31. Yet further remark's regarding plaintiff's pregnancy by defendant Clifford Van Voorhees, Hyde Leadership's Chief Operating Officer, also underscored defendants' discriminatory animus. During one of the mandatory character building meetings plaintiff was required to attend with fellow staff members, defendant Clifford Van Voorhees remarked that women are not suited to perform many jobs because they are overely "emotional", "easily upset", and "take things personally."

7

32. Thereafter in a small group breakaway session in which both planitiff and defendant Van Voorhees were participants, the latter continued to press this isse specifically addressing plaintiff, even after the plaintiff expressed her disagreement, and to the point where plaintiff left the session and requested that defendant Joanne Goubourn assign her to a different group.

33. Defendant Van Voorhees pursued plaintiff during this exchange with Goubourne, and upon seeing how upset she was, publically excoriated her stating that was overly emotional because of "hormones" resulting from her pregnancy.

34. Prior to January of 2009 plaintiff was performing all of her workplace duties satsfactorily and received no complaints from the defendants about her performance.

35. Thereafter, however, her immediate supervisor, defendant Kenneth Kern began scrutinizing her work habits relentlessly. He began to, among other things, arbitrarily deduct time from her time-sheet when she was away from her desk performing other tasks or assignments given to her by others.

36. He began to give her stern lectures if she signed in a few minutes late and attributed her supposed

8

tardiness to "morning sickness." Plaintiff was compelled to work extra time after school to make up for the time that he unilaterally deducted from her time sheets when she was away from her desk.

37. On several occasions defendant Kern would threaten to withhold her pay for an entire day if she was absent for any portion thereof in connection with routine maternity care appointments.

38. Thereafter in early June of 2009 defednant Joanne Goubourn admonished plaintiff that her hormones were causing her to have an attitude, and instructed her to leave work and come back the following day.

39. Thereafter defendants telephoned plaintiff's husband and told him that her employment was terminated and that she should not return to the office until they summoned her.

40. Plaintiff was thereafter summoned to the office on June 5, 2009 and was advised by defednant Joanne Goubourn that the Board of Trustees had decided to eliminate her position and terminate her employment.

41. Defendant Goubourn disclaimed any responsibilty for any of the foregoing decisions and repeatedly advised plaintiff that all decision regarding her position and employment status were made by the Hyde

Leadership Board of Trustees.

42. Before she left the office, the defendants presented plaintiff with a release of all potential claims against the defendants and urged her to sign it.

43. When plaintiff declined, defendant Adorno made a series of threatening phone calls to plaintiff at her home warning her of dire consequenses if she failed to sign the release.

44. Defendant Adorno, among other things, threatened plaitniff that (notwithstanding her COBRA rights) plaintiff's insurance benefits, including those relating to her maternity care, would be immediately terminated if she failed to sign the release forthwith.

45. On or about June 29, 2009 defendant Adorno initiated a telephone call to plaintiff during which over the course of 30 minutes she repeatedly threatened that plaintiff would go through child-birth without health insurance benefits if she failed to sign and return the release immediately.

46. During the course of the foreoing telephone conversation, plaintiff – terrified at the prospet of losing her insurance benfits and forced to choose between giving up her legal rights or protecting her health and that of her child – became hysterical and went into labor

pre-maturely. She was immediately rushed to the hospital where she gave birth to her child.

### AS AND FOR A FIRST CLAIM FOR RELIEF
(Pregnancy Discrimination in Violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k))

47. Plaintiff incorporates each and every allegation set forth in paragraphs 1 through 46 as if fully set forth herein.

48. Plaintiff, despite reasonable efforts, has been unable to find comparable employment subsequent to defendants' termination of her employment.

49. As a proximate result of the defendants' discrimination against plaintiff, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings and other employment benefits.

50. As a further proximate result of the defendants' actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

51. The conduct of the defendants was outrageous and malicious, was intended to injure plaintiff, and was done with conscious disregard of plaintiff's civil rights.

WHEREFORE, plaintiff prays that this Court enter judgment awarding plaintiff the following relief:

1. An award of plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional and educational opportunities, including an award of front pay compensating plaintiff for loss of future salary and benefits;

2. An award of damages in an amount to be determined at trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

3. An award of punitive damages;

4. An order enjoining defendants from engaging in the wrongful practices alleged herein;

5. An award of reasonable attorneys' fees and the costs of this action including attorney's fees for representation before the New York State Division of Human Rights as required before commencing proceedings in this federal action; and

6. Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

52.  Plaintiff demands a jury for all claims stated herein.

Dated: Mineola, New York
       May 25, 2012

Karl J. Stoecker (KS 0571)
LAW OFFICES OF KARL J. STOECKER
22 Jericho Turnpike, Suite 100
Mineola, New York 11501
(212) 818-0080